**IN THE COURT OF APPEALS OF IOWA**

No. 19-0084
Filed November 27, 2019

**IN THE MATTER OF T.M.,**
**Alleged to Be Seriously Mentally Impaired,**

**T.M.,**
      Respondent-Appellant.

_____

      Appeal from the Iowa District Court for Polk County, Scott J. Beattie, Judge.

      T.M. appeals the district court order finding him to be seriously mentally impaired.

**AFFIRMED.**

      Erin M. Carr of Carr Law Firm, P.L.C., Des Moines, for appellant.

      Thomas J. Miller, Attorney General, and Gretchen Kraemer, Assistant Attorney General, for appellee State.

      Considered by Doyle, P.J., and Tabor and Schumacher, JJ.

**SCHUMACHER, Judge.**

T.M. appeals the district court order finding him to be seriously mentally impaired. We affirm the decision of the district court.

**I. Background Facts and Proceedings.**

T.M. has a diagnosis of schizophrenia. He also has a significant history of previous mental-health services. Prior to the application being filed alleging mental impairment in December 2018, T.M. had participated for a period in outpatient services. He had also been subject to two prior inpatient hospitalizations in approximately 2014 and 2016. Following a physical assault on his elderly mother in December 2018, T.M. was hospitalized on an emergency basis.

Difficulties followed the emergency hospitalization. Two physical holds and injectable medications were required for T.M. The magistrate found T.M. to be seriously mentally impaired, and T.M. appealed the magistrate's finding to the district court. Following a district court hearing, T.M. was found to be seriously mentally impaired pursuant to Iowa Code chapter 229 (2018). The district court found that T.M. was suffering from "schizophrenia, persecutory and grandiose delusions"; that T.M. had been treated numerous times in the past but denied having a mental illness; that T.M. refused treatment; and that T.M. was dangerous, as evidenced by the assault on his mother. The court further found T.M. to be "seriously mentally impaired" within the meaning of paragraphs (a), (b), and (c) of Iowa Code section 229.1(20).[1] T.M. was ordered hospitalized for inpatient treatment.[2]

---

[1] In 2018, the legislature added new paragraph (d) to section 229.1(20). *See* Iowa Acts, ch. 1056, § 7. Neither party addresses section 229.1(20)(d) in their arguments to us.
[2] The commitment proceedings were dismissed on March 22, 2019, as T.M. had not complied with treatment and could not be located.

**II. Standard of Review.**

We review sufficiency of the evidence challenges in involuntary commitment appeals for errors of law. *See In re B.B.*, 826 N.W.2d 425, 428 (Iowa 2013). The district court's findings of fact are binding on appeal if supported by substantial evidence, which means "a reasonable trier of fact could conclude the findings were established by clear and convincing evidence." *In re J.P.*, 574 N.W.2d 340, 342 (Iowa 1998). Clear and convincing evidence "means that there must be no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence." *B.B.*, 826 N.W.2d at 428 (citation omitted).

**III. Serious Mental Impairment.**

For a person to be committed involuntarily, they must have a "serious mental impairment." *J.P.*, 574 N.W.2d at 342–43; Iowa Code § 229.6(2)(a)(2). In determining whether a person has a serious mental impairment, the State must prove (1) that a person is mentally ill, (2) lacks sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment, and (3) is likely, if allowed to remain at liberty, to inflict physical injury on the person's self or others, to inflict serious emotional injury on a designated class of persons, or be unable to satisfy the person's physical needs. Iowa Code § 229.1(20); *see also B.B.*, 826 N.W.2d at 432.

The term "likely" is construed to mean "probable or reasonably to be expected." *In re Oseing*, 296 N.W.2d 797, 801 (Iowa 1980) (citation omitted). "[T]he endangerment element requires a predictive judgment, based on prior manifestations but nevertheless ultimately grounded on future rather than past danger." *In re Mohr*, 383 N.W.2d 539, 542 (Iowa 1986) (internal quotation marks omitted). The danger the person poses to himself

or others must be evidenced by a "recent overt act, attempt or threat." *Id.* "In the context of civil commitment . . . an 'overt act' connotes past aggressive behavior or threats by the respondent manifesting the probable commission of a dangerous act upon himself or others that it is likely to result in physical injury." *In re Foster*, 426 N.W.2d 374, 378 (Iowa 1988). Threats have been held to be sufficient indicia to support commitments. *B.B.*, 826 N.W.2d at 433.

In his appeal, T. M. contests only the third element of the statutory requirements set forth in Iowa Code section 229.1(20) for an individual to be determined they have a serious mental impairment. T.M. concedes the State has satisfied the first two elements by proving that T.M. has a mental illness and lacks sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment. He argues the State has failed to prove by clear and convincing evidence that he is dangerous. As such, we focus on whether the State has proven whether T.M. is likely to physically injure himself or others if allowed to remain at liberty; is likely to inflict serious emotional injury on a designated class of persons; or is unable to satisfy his needs for nourishment, clothing, essential medical care, or shelter so it is likely that he will suffer physical injury, physical debilitation, or death.

T.M. assaulted his mother several times prior to court intervention. After being delivered to the hospital by law enforcement, T.M. left his mother threatening voice messages. Further, he was aggressive with staff in the hospital and required physical holds. T.M. was reported to be "extremely physically agitated." His speech was garbled and incoherent. He took a stance as if to physically fight staff and threatened to put one of the nurses "in a concentration camp." He refused his medication. The physician's

report reflects that T.M.'s delusions interfere with decision-making and self-care, which could result in physical injury, physical debilitation, or death. As reflected in the State's exhibits, T.M. lost weight prior to admission and was paranoid that his food was being poisoned.

Taking into consideration all of the above, we find the evidence sufficient to support the district court's finding that T.M. is seriously mentally impaired within the meaning of paragraphs (a), (b), and (c) of Iowa Code section 229.1(20).

**IV. Conclusion.**

Because there is sufficient evidence to conclude T.M. (1) is mentally ill, (2) lacks sufficient judgment to make responsible decisions with respect to his treatment, and (3) is likely to physically injure himself or others if allowed to remain at liberty without treatment, is likely to inflict serious emotional injury on a designated class of persons, and is unable to satisfy his need for nourishment, clothing, essential medical care, or shelter so that it is likely that he will suffer physical injury, physical debilitation, or death, we agree that T.M. is seriously mentally impaired as defined by Iowa Code section 229.1(20). Consequently, we affirm the district court's ruling.

**AFFIRMED.**